-For Publication-

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ANTOINE ELLIS and DANIEL SPEAKMAN,**<br>　　　　　　**Plaintiffs,**<br><br>　　　v.<br><br>**MONTGOMERY COUNTY and MONTGOMERY COUNTY CORRECTIONAL FACILTY,**<br>　　　　　　**Defendants.** | **CIVIL ACTION**<br><br><br><br>**NO.  16-2143** |

## OPINION

Plaintiffs Antoine Ellis and Daniel Speakman have brought this putative state-law class action asserting federal court jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), on behalf of themselves and all others whose arrest records and personal information were made widely available on the Internet through the Inmate Locator maintained by Defendants Montgomery County and the Montgomery County Correctional Facility, allegedly in violation of the Pennsylvania Criminal History Records Information Act ("CHRIA"), 18 Pa. Cons. Stat. § 9101 *et seq*.  Defendants have filed a motion to dismiss for lack of subject-matter jurisdiction, arguing both that Plaintiffs do not have standing to bring this suit and that two mandatory exceptions to CAFA-based jurisdiction – the "home state" exception and the "local controversy" exception – require the Court to decline jurisdiction over this matter. Defendants' motion shall be granted.

I.  BACKGROUND

Defendant Montgomery County Correctional Facility ("MCCF") is a correctional facility in Eagleville, Pennsylvania that houses pretrial detainees and inmates serving short-term sentences imposed by the Montgomery County Court of Common Pleas.  Defendant

Montgomery County (the "County") is the Pennsylvania political subdivision responsible for operating MCCF. On its publicly available website, MCCF maintains an "Inmate Locator" that presents various information about inmates who have been housed at MCCF.

Plaintiff Antoine Ellis is a Pennsylvania citizen who was recently released from MCCF. His sex, height, date of birth, weight, eye color, FBI identification number, Pennsylvania identification number, date of arrest, and notes regarding that arrest were posted on the Inmate Locator. Plaintiff Daniel Speakman is a New Jersey citizen who has never been arrested and was never an inmate at MCCF. An unidentified MCCF inmate used Speakman's personal information during his own booking and, as a result, Speakman's sex, height, date of birth, weight, eye color, and hair color were posted on the Inmate Locator associated with records for the arrest of the other individual. The Inmate Locator profiles for both Plaintiffs were obtained by Mugshots.com, which then re-published the information. Speakman alleges that his friends and family viewed the information on either the Inmate Locator or Mugshots.com. Both Plaintiffs claim that they experienced emotional damage, humiliation, and a loss of reputation as a result of the publication of their personal information in association with a criminal record via the Inmate Locator.

After the initial briefs were filed in support of this motion, the parties were granted leave to conduct discovery to ascertain the citizenship of each of the class members. They have submitted to the Court the addresses that inmates provided to MCCF when they were booked into the facility. As of May 4, 2016, the date on which this case was first filed, 92.5% of the 1,985 current inmates at MCCF had provided a home address in Pennsylvania, 4.6% had provided a non-Pennsylvania address, and 2.8% had not provided any address. When this analysis is expanded to the 12,241 inmates booked in the two years prior to the filing of this case,

91.2% had Pennsylvania addresses, compared to 5.0% with non-Pennsylvania addresses and 3.8% with no address.  Over the past six years, of the 22,777 inmates booked at MCCF, 91.9% reported a Pennsylvania home address upon their booking, 5.4% provided an address outside of Pennsylvania, and 2.8% did not provide an address.  Finally, expanding the analysis to twenty years and an inmate population of 191,754 yields similar results:  92.6% provided Pennsylvania addresses, 5.0% provided non-Pennsylvania addresses, and 2.4% did not provide an address.

Recognizing that the booking addresses represent the proposed class members' residency prior to their arrest, and not at the time this case was filed, Defendants conducted public records searches for each inmate with a last name beginning with "E" or "S" (*i.e.*, the letters of the named Plaintiffs' names) who had been booked at MCCF in the year prior to May 4, 2016.  This method yielded a sample of 1,156 inmates.  Defendants found addresses for 876 of the sampled inmates.  Of the addresses that were located, 838 or 95.6% were in Pennsylvania, constituting 72.5% of the total sample.  Only 38 inmates were found to have addresses outside of Pennsylvania, constituting 4.3% of the located addresses and 3.2% of the total sample.  Neither party has presented specific evidence regarding the proposed class members' intent to remain at their booking address or current address.

## II. LEGAL STANDARD

In evaluating a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, "a court must first determine whether the movant presents a facial or factual attack."  *In re Schering Plough Corp. Intron/Temodar Consumer Class Action Litig.*, 678 F.3d 235, 243 (3d Cir. 2012).  A facial attack "contests the sufficiency of the pleadings," and the court is limited to considering only "the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff."  *Id.* (internal quotation marks omitted).  A factual

attack, on the other hand, "concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014) (internal quotation marks and modifications omitted). When considering a factual attack, "a court may weigh and consider evidence outside the pleadings." *Id.* (internal quotation marks omitted).[1]

When federal jurisdiction is based on CAFA, the party asserting jurisdiction bears the burden of showing that the case meets the initial jurisdictional requirements under the Act – an amount in controversy over $5,000,000; at least 100 members in the proposed class; and at least one class member who is a citizen of a different state than at least one defendant. *See* 28 U.S.C. § 1332(d)(2) & (5). Once CAFA jurisdiction is established, a party seeking to invoke an exception requiring a court to decline that jurisdiction "bears the burden of proving by a preponderance of the evidence that the exception applies." *Vodenichar v. Halcón Energy Props., Inc.*, 733 F.3d 497, 504 (3d Cir. 2013).[2]

---

[1] Plaintiffs argue that CAFA exceptions are not properly raised in a Rule 12(b)(1) motion because they are not jurisdictional but instead operate as mandatory abstention rules that require a court to decline already existing jurisdiction. *See Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 152 (3d Cir. 2009) (examining CAFA exceptions separately from the court's subject-matter jurisdiction); *see also Gold v. N.Y. Life Ins. Co.*, 730 F.3d 137, 139 (2d Cir. 2013) ("[W]e hold that CAFA's home state exception is not jurisdictional."). While it is true that CAFA exceptions are not strictly jurisdictional, courts regularly consider the CAFA exceptions under Rule 12(b)(1) since they present a threshold issue concerning the exercise of jurisdiction. *See Jeter v. Wild West Gas*, No. 12-cv-411, 2014 WL 3890308, at *3 (N.D. Okla. Aug. 7, 2014) ("Procedurally, the Court treats the motion similarly to a motion to abstain under Rule 12(b)(1), which is permissible even though such motions are not actually 'jurisdictional' in nature."); 5B Wright & Miller, *Federal Practice and Procedure* § 1350 (explaining that "the scope of Rule 12(b)(1) is flexible, often serving as a procedural vehicle for raising various residual defenses . . . challenging the federal court's ability to proceed with the action").

[2] Plaintiffs contend that a party bears the burden of proving the applicability of a CAFA exception to a "legal certainty." However, the cases they have cited in support of this position apply the "legal certainty" test only to the initial jurisdictional showing. *See Judon v. Travelers Prop. Cas. Co. of Am..*, 773 F.3d 495, 500 (3d Cir. 2014); *Lenell v. Advanced Mining Tech., Inc.*, 14-cv-1924, 2014 WL 7008609, at *3 (E.D. Pa. Dec. 11, 2014). Furthermore, even in the context of the initial jurisdictional inquiry, a preponderance of the evidence standard applies "where there are contested facts related to jurisdiction." *Judon*, 773 F.3d at 503.

**III.    DISCUSSION**

Defendants do not dispute that this case meets the initial requirements for subject-matter jurisdiction under CAFA:  a proposed class of more than 100 persons, an amount in controversy exceeding $5,000,000, and at least one Plaintiff who is a citizen of a state other than Pennsylvania (where both Defendants are citizens).  Instead, they argue that the case must be dismissed for two other reasons:  First, they contend that Plaintiffs have not identified an injury-in-fact and thus do not have standing to sue under Article III of the Constitution.  Second, they argue that both the home state and local controversy exceptions to CAFA require the Court to decline to exercise its jurisdiction.  Their standing argument represents an attack on the sufficiency of the factual averments in the pleadings, and thus presents a facial attack to jurisdiction.  Their CAFA exception argument, on the other hand, points to evidence outside pleadings which was gathered during jurisdictional discovery, and thus will be considered as a factual argument that the Court must decline to exercise jurisdiction.

The parties disagree about the order in which Defendants' arguments must be considered.  Plaintiffs argue that the Court must address standing first, since standing is jurisdictional and, they contend, the CAFA exceptions cannot be addressed until jurisdiction is established in the first instance.  Defendants respond that if either standing or the CAFA exceptions mandate dismissal, the Court need not analyze the other issue.  There is no Third Circuit precedent to resolve the order of analysis, but this question was recently addressed by the Fifth Circuit in *Watson v. City of Allen, Texas*, 821 F.3d 634, 638 (5th Cir. 2016).  In that case, the Fifth Circuit acknowledged that CAFA exceptions are not jurisdictional, but nevertheless should be examined first because they present "a fundamental antecedent question – whether this case even belongs in federal court." *Id.* This approach is prudent, since an analysis of standing is unnecessary if

5

CAFA jurisdiction must be declined because of the citizenship of the plaintiff class members, so the Court shall follow the Fifth Circuit's example.

### A. Mandatory CAFA Exceptions

CAFA expanded federal court jurisdiction to include large class actions that lack the complete diversity of citizenship required to invoke traditional diversity jurisdiction.  To prevent the Act's expanded federal jurisdiction from being exercised over truly local cases, however, Congress included the home state and local controversy exceptions, which require a court to decline CAFA jurisdiction over cases when certain requirements regarding the citizenship of the class and the nature of the dispute are met.  *See Vodenichar*, 733 F.3d at 508 (discussing CAFA's legislative history).  The home state exception applies when two-thirds of the members of the proposed plaintiff class and the "primary defendants, are citizens of the State in which the action was originally filed."  28 U.S.C. § 1332(d)(4)(B).  The local controversy exception applies when: (1) greater than two-thirds of the members of the proposed class are "citizens of the State in which the action was originally filed"; (2) at least one defendant from whom "significant relief" is sought and whose alleged conduct forms a "significant basis" for the claims is a "citizen of the State in which the action was originally filed"; (3) the "principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed"; and (4) no other class action has been filed "asserting the same or similar factual allegations" against the same defendants during the prior three years.  28 U.S.C. § 1332(d)(4)(A).

Defendants argue that this case is a fundamentally local dispute between predominately Pennsylvania plaintiffs and two Pennsylvania municipal defendants concerning alleged violations of Pennsylvania law arising from actions that took place in Pennsylvania, and that

both the local controversy and home state exceptions therefore require the Court to decline adjudication of the matter.  Plaintiffs contest the application of these exceptions in this case on two grounds.  First, they argue that the exceptions apply only to cases removed from state court.  Second, they argue that even if the exceptions apply to matters originally filed in federal court, Defendants have failed to prove that more than two-thirds of the proposed class members are citizens of Pennsylvania.

### 1.  Application to Cases Filed in Federal Court

Plaintiffs contend that the CAFA exceptions apply only to cases removed from state court, but have not identified any authority that affirmatively supports their position.  In the absence of direct authority, they argue that the statutory language which ties the CAFA exceptions to citizenship and events in "the State in which the action was originally filed" should be read as "the State [*court*] in which the action was originally filed," which, Plaintiffs suggest, would imply that the exceptions can be invoked only by a party seeking a remand to state court.  To support this interpretation, they note that all of the CAFA exception cases from courts within the Third Circuit cited by Defendants arose in the context of a motion to remand.  They also point out that CAFA's legislative history contains examples of hypothetical cases removed from state court to illustrate the intended effect of the exceptions.  *See* S. Rep. No. 109-14, at 41 (2005).

Plaintiffs' argument is unavailing.  If Congress had intended the exceptions to apply only to cases removed from state court, it could have expressly created such a limitation.  It did not.  The statute contains no reference to "State *court*," "remand," "removal," or any other basis for limiting the scope of the exceptions to removal cases.  As a result, the exceptions have been routinely applied in cases originally filed in federal court, including precedential decisions from

7

the Second and Fifth Circuits.  *See Gold v. N.Y. Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013); *Hollinger v. Home State Mut. Ins., Co.* 654 F.3d 564, 571 n.6 (5th Cir. 2011) (noting that the same standards apply to CAFA exception cases regardless of whether the exceptions are raised on a motion to remand or a motion to dismiss); *see also, e.g.*, *Jeter v. Wild West Gas*, No. 12-cv-411, 2014 WL 3890308 (N.D. Okla. Aug. 7, 2014); *Bey v. SolarWorld Indus. Am., Inc.*, 904 F. Supp. 2d 1103 (D. Or. 2012).  Plaintiffs have not provided a compelling reason to deviate from the plain language of the statute or this judicial consensus.  Accordingly, the CAFA exceptions are appropriately invoked by Defendants.

### 2. Citizenship of Class Members

Both of the mandatory CAFA exceptions invoked by Defendants apply only when two-thirds of the proposed plaintiff class members are citizens of the state in which the action was originally filed.  The other two components of the home state exception are undisputed (*i.e.*, the proposed class will exceed 100 members and Defendants are citizens of Pennsylvania), so if Defendants have met their burden of proof to show that two-thirds of the proposed class members are citizens of Pennsylvania, the home state exception applies and the Court must dismiss this case.  If they have not met their burden with respect to the class members' citizenship, then neither of the asserted exceptions apply, and is it is unnecessary to examine the remaining elements of the local controversy exception.

In weighing and considering the evidence submitted by a party seeking to invoke a CAFA exception, a court should engage in a "practical and reasonable" inquiry that considers the evidence in light of the context of the case.  *Hollinger*, 654 F.3d at 572.  This pragmatic approach obviates the need to ascertain absolute proof of domicile for every class member, which would make the application of CAFA's citizenship requirements "unworkable" from a

practical standpoint. *See Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.* ("*Preston II*"), 485 F.3d 804, 816 (5th Cir. 2007).

The precise contours of this "practical and reasonable" approach are still emerging, but sensible guideposts have been suggested. On one hand, the practical and reasonable approach means that "a court need not use a precise mathematical formula or exact data." *Doe v. Georgetown Synagogue-Kesher Israel Congregation*, 118 F. Supp. 3d 88, 95 (D.D.C. 2015). On the other hand, most courts have held that inferences drawn from the definition of the class, standing alone, are insufficient to prove a CAFA exception. *See Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 884 (9th Cir. 2013) ("[T]here must ordinarily be at least some facts in evidence from which the district court may make findings regarding class members' citizenship for purposes of CAFA's local controversy exception.").[3] Taken together, the emerging guideposts suggest a straightforward application of the preponderance-of-the-evidence standard: The party seeking to invoke an exception must provide *evidence* (not merely assertions) that makes it more likely than not that more than two-thirds of the proposed class consists of citizens of the relevant state.

### a. Residency-Domicile Presumption

Defendants seek to prove the class members' citizenship with evidence of residency. It is well established, however, that "residence and citizenship [are] wholly different things." *Steigleder v. McQuesten*, 198 U.S. 141, 143 (1905). Citizenship is synonymous with domicile, which consists of residency (*i.e.*, physical presence) combined with an "intent to remain indefinitely." *Krasnov v. Dinan*, 465 F.2d 1298, 1300 (3d Cir. 1972). Defendants acknowledge

---

[3] Some district courts, however, have permitted an inference of citizenship to be drawn directly from facts inherent in the definition of the class. *See, e.g.*, *Mattera v. Clear Channel Commc'ns, Inc.*, 239 F.R.D. 70, 80 (S.D.N.Y. 2006) ("While Defendants have not provided evidence, in the form of an affidavit or otherwise, establishing such citizenship, it is reasonably likely that more than two-thirds of the putative class members of the proposed class – all of whom work in New York – are citizens of New York.").

9

the distinction between residency and citizenship, but argue that residency establishes a "rebuttable presumption of domicile," which has been recognized by at least one court in this district in the context of CAFA exceptions. *See Anthony v. Small Tube Mfg. Corp.* 535 F. Supp. 2d 506, 515 (E.D. Pa. 2007). Plaintiffs urge the Court to reject this presumption.

The Third Circuit has not addressed whether a residency-domicile presumption applies in the CAFA exception context, and authority from other courts is divided. In support of the presumption, both the district court in *Anthony* and Defendants in this case point to the Supreme Court's assertion that "[t]he place where a man lives is properly taken to be his domicile until facts adduced establish the contrary," *Dist. of Columbia v. Murphy*, 314 U.S. 441, 455 (1941), which was cited by the Third Circuit to support the proposition that "[w]here one lives is prima facie evidence of domicile." *Krasnov*, 465 F.2d at 1300 (citing *Murphy*, 314 U.S. 441). Viewed in isolation, this authority – a clear statement by the Supreme Court adopted by the Third Circuit – provides a strong basis for the presumption described in *Anthony*.

Plaintiffs, however, also turn to *Krasnov* – a diversity jurisdiction case – to argue against the presumption. They point to the language immediately following the portion relied upon by Defendants: "[M]ere residency in a state is insufficient for purposes of diversity. The fact of residency must be coupled with a finding of intent to remain indefinitely." *Krasnov*, 465 F.2d at 1300 (internal citations omitted). They then cite to another district court within the Third Circuit that rejected reliance on residency to establish domicile in the CAFA exception context. *See Nop v. Am. Water Resources, Inc.*, No. 15-cv-1691, 2016 WL 4890412, at *4 (D.N.J. Sept. 14, 2016) ("[W]ithout further evidence of an intent to stay, the fact that the putative class members have a New Jersey mailing address is not sufficient to prove state citizenship."). Finally, Plaintiffs note that the Seventh Circuit has categorically rejected reliance on residency to prove citizenship to

establish a CAFA exception, and the Fifth Circuit has required parties seeking to invoke a CAFA exception to offer some proof of the class members' citizenship beyond mailing addresses (at least when the facts of the case do not support a tight nexus between residency and domicile). *See In re Sprint Nextel Corp.*, 593 F.3d 669, 675 (7th Cir. 2010) ("[A] court may not draw conclusions about the citizenship of class members based on things like their phone numbers and mailing addresses."); *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.* ("*Preston I*"), 485 F.3d 793, 800 (5th Cir. 2007) (rejecting the use of patients' hospital billing addresses to establish Louisiana citizenship in the aftermath of Hurricane Katrina). Indeed, although not cited by Plaintiffs, all five circuits to have considered the link between residency and domicile in the CAFA exception context prior to the close of briefing on this motion had required some proof of citizenship beyond residency. *See Mason v. Lockwood, Andrews & Newnam, P.C.*, 842 F.3d 383, 397-98 (6th Cir. 2016) (Kethledge, J., dissenting) (collecting cases).[4]

Shortly after briefing of this motion was completed, however, the Sixth Circuit broke with its sister circuits and endorsed the application of "the long-standing presumption of domicile based on residency" in the CAFA exception context. *Id.* at 395. In recognizing the presumption, the Sixth Circuit acknowledged that domicile consists of both residency and an intent to remain, but further recognized that "the law of domicile has long been one of presumptions," including the "primacy of residency in the domicile calculus," which stretches to

---

[4] Only the Eighth Circuit, however, has joined the Seventh in categorically rejecting an inference of domicile arising from residency, while the Ninth and Eleventh Circuits followed the Fifth Circuit's more context-specific approach and have left the door open for a finding of domicile based on residency evidence in some cases. *Compare Hood v. Gilster-Mary Lee Corp.*, 785 F.3d 263, 265-66 (8th Cir. 2015) (rejecting the use of last-known addresses to establish the citizenship of class members and adopting the Seventh Circuit's reasoning from *In re Sprint*), *with Mondragon*, 736 F.3d at 884 (finding the residency information submitted in that case insufficient to establish domicile, but adding, "We do not think, as the Seventh Circuit suggested, that evidence of residency can never establish citizenship. We agree with the observation of the Fifth Circuit that a court should consider 'the entire record' to determine whether evidence of residency can properly establish citizenship.") *and Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1166 (11th Cir. 2006) (rejecting use of residency information from a sample of the prospective class to establish domicile and noting flaws in the sampling method).

at least the eighteenth century in English common law. *Id.* at 390; *see Bruce v. Bruce*, [1790] 47 Eng. Rep. 1277, 1281 (H.L.) ("A person's being at a place is *primâ facie* evidence that he is domiciled at that place."). The presumption was endorsed by the U.S. Supreme Court as early as 1852 and as recently as 1941. *See Murphy*, 314 U.S. at 455 ("The place where a man lives is properly taken to be his domicile until facts adduced establish the contrary."); *Ennis v. Smith*, 55 U.S. 400, 423 (1852) ("Where a person lives, is taken *primâ facie* to be his domcil, until other facts establish the contrary.").

The Sixth Circuit concluded that the circuits which have rejected a presumption or inference from residency to domicile have relied too directly on precedent developed in the context of diversity jurisdiction, in which the longstanding residency-domicile presumption conflicts with the presumption against federal diversity jurisdiction. *Mason*, 842 F.3d at 391. The Supreme Court held long ago that the presumption against federal jurisdiction carries more weight. *Robertson v. Cease*, 97 U.S. 646, 649 (1878). This interaction between the presumptions is captured by the Third Circuit's statement in *Krasnov* that "[w]here one lives is prima facie evidence of domicile, but mere residency in a state is insufficient for purposes of *diversity*." 465 F.2d at 1300 (internal citations omitted and emphasis added). The Sixth Circuit's analysis in *Mason* thus expands on the principle embedded within the Third Circuit's careful wording in *Krasnov*: The inadequacy of the residency-domicile presumption is unique to the context of diversity *jurisdiction*. And, as the Sixth Circuit noted, "[b]ecause the local controversy [and home state] exception[s] [are] not jurisdictional, the premise of *Robertson* [*v. Cease*] and its jurisdictional progeny is missing here." *Mason*, 842 F.3d at 393. The Third Circuit's narrow observation in *Krasnov* about the inadequacy of residency to establish diversity jurisdiction therefore does not control the CAFA exception analysis.

Plaintiffs suggest that even if the insufficiency of residency to prove domicile described in *Krasnov* emerged from jurisdictional cases, it should be extended to the CAFA exception context because CAFA was intended to expand federal jurisdiction and a party seeking to invoke an exception to that expanded jurisdiction should be unable to rely on an evidentiary presumption. But the Sixth Circuit in *Mason* rejected this argument, noting that the same argument would foreclose the use of any presumption to meet a legal burden and observing that the "residency-domicile presumption fits particularly well in the CAFA exception context, where the moving party is tasked with demonstrating a fact-centered proposition about a mass of individuals, many of whom may be unknown at the time the complaint is filed." *Mason*, 842 F.3d at 392. The Sixth Circuit's reasoning is persuasive. Even circuits that have cast doubt on the residency-domicile presumption have noted that the CAFA exception citizenship inquiry should be "based on practicality and reasonableness" and not operate under standards that are "unworkable" in the context of mass litigation. *Preston II*, 485 F.3d at 816. And CAFA's legislative history suggests that the citizenship inquiry "should be made largely on the basis of readily available information." S. Rep. No. 109-14, at 44 (2005). These authorities thus counsel against imposing a heightened standard of proof in the CAFA exception context, and the Court therefore finds no compelling reason to expand *Krasnov*'s rejection of the residency-domicile presumption beyond the specific context of diversity jurisdiction.

This reading of *Krasnov* leaves only the first part of the Third Circuit's crucial passage applicable to this case: "Where one lives is prima facie evidence of domicile." 465 F.2d at 1300. Thus, a class member's residency creates a rebuttable presumption of citizenship for the purposes of establishing the home state and local controversy exceptions to CAFA jurisdiction.

### b. Weighing Residency in the Context of the Record

Turning to whether the residency evidence in this case is sufficient to establish that more than two-thirds of class members are Pennsylvania citizens, Defendants have shown that more than 90% of inmates at MCCF report a Pennsylvania address when they are booked.[5] For the proportion of Pennsylvania citizens in the proposed class to fall below two-thirds, the link between booking residence and current citizenship would have to be broken for nearly one quarter of the class. On this point, Plaintiffs have offered no evidence to suggest that vast numbers of the class members left Pennsylvania after their release or that a large proportion of the class maintains a domicile in a state other than where they reside.

It is true that the residency information submitted by Defendants is imperfect. The fact that more than 90% of the individuals booked at MCCF reported Pennsylvania addresses when they were booked does not necessarily reveal residency as of the date on which this case was filed, which is the date on which citizenship is determined for CAFA purposes. *See* 28 U.S.C. § 1332(d)(7). But Defendants need not prove the citizenship of every member of the class with precision. They must only show that it is more likely than not that more than two-thirds are citizens of Pennsylvania. Plaintiffs have not questioned the use of MCCF booking information as a proxy for class membership, and a follow-up sample of public records identified a non-Pennsylvania address for only 5% of the persons incarcerated at MCCF in the prior year. Although this evidence is limited, it reinforces residency information gathered at the time of booking. Given that there is no evidence to suggest that individuals booked at MCCF were unusually transient or that the class members who were Pennsylvania residents migrated *en*

---

[5] The parties dispute which statute of limitations applies to CHRIA, with Defendants proposing the two-year period that applies to tort actions and Plaintiffs arguing for Pennsylvania's residual six-year period. Because the residency data is similar across all time periods, the Court need not resolve this statute of limitations dispute to determine if a CAFA exception applies.

*masse* to other states after their release from MCCF, the most likely conclusion from Defendants' limited sample is that the proportion of class members still residing in Pennsylvania after their release from MCCF approximates the 91% share of MCCF inmates who reported a Pennsylvania address at their booking.

Plaintiffs have not pointed to anything about the circumstances of this case to suggest the link between residency and domicile is broken for a large number of class members. Indeed, the context of the case suggests the opposite: The proposed class consists of persons booked in a local jail in Pennsylvania located in a suburban county that does not border another state,[6] and Plaintiffs' have not provided evidence that Pennsylvania has had a major event – natural, man-made, or economic – to cause widespread displacement to other states during the relevant time period. Considering the record as a whole, the Court finds that Defendants have shown by a preponderance of the evidence that more than two-thirds of the members of the proposed class are citizens of Pennsylvania.[7]

Since it is undisputed that the proposed class exceeds 100 members and that Defendants are citizens of Pennsylvania, the finding that more than two-thirds of the class members are also citizens of Pennsylvania triggers CAFA's home state exception and requires the Court to decline

---

[6] A court "may, of course, take judicial notice of geography." *Boyce Motor Lines v. United States*, 342 U.S. 337, 344 (1952). The geographic position of Montgomery County was noted using Google Maps (maps.google.com), which has been regularly relied upon for judicial notice by courts within the Third Circuit. *See, e.g.*, *Dynka v. Norfolk S. Ry. Corp.*, 09-cv-4854, 2010 WL 2490683, at *1 n.2 (E.D. Pa. June 15, 2010).

[7] It should be noted, that this finding does not rely solely on the residency-domicile presumption. Although the Court has predicted that the Third Circuit would recognize the presumption in the CAFA exception context, the overall factual record reinforces the residency evidence to show that it is more likely than not that more than two-thirds of the proposed class members are citizens of Pennsylvania even applying the more holistic factual approach required by the Fifth and Ninth Circuits.

jurisdiction over this matter.[8]  Defendants' motion will therefore be granted, and this case shall be dismissed without prejudice.

An order follows.

**Dated**:  January 27, 2017

                                             **BY THE COURT:**

                                             **/s/ Wendy Beetlestone**
                                             _____
                                             **WENDY BEETLESTONE, J.**

---

[8] Since the home state exception requires the Court to decline jurisdiction, it is unnecessary to determine if the local controversy exception also applies to this case.